THE EAST END LUMBER CO. *v.* BENNETT ET AL.

(Decided April 24, 1933.)

*Messrs. Kunkel & Kunkel,* for plaintiff.

*Messrs. Maxwell & Ramsey, Messrs. Nichols, Morrill, Wood, Marx & Ginter, Messrs. Britton & Britton,* and *Mr. David V. Attig,* for defendants.

Ross, J. This case is presented on appeal from the court of common pleas of Hamilton county. The liens of two claimants are involved—that of the East End Lumber Company and that of the Cincinnati Builders Supply Company.

It is urged, first, that the last deliveries were made more than sixty days before the filing of the liens. While the evidence is in conflict upon this issue, as to each claimant, we find that the weight of the evidence is with the claimants.

The other question involves the situation that more than one job was carried on by the general contractor upon the same premises and for the same owner.

The facts, developed from the record, are that on December 28, 1927, Emily A. Bennett entered into a contract with Wm. Tontrup and John Dunn for the erection of a "garage 22° x 38° with red roofing, as per conversation, for the sum of $1,000.00." This building has been designated by counsel as a "service shed."

On January 11, 1928, there appears a contract in the record signed by John Dunn and Wm. Tontrup, for the erection of a "concrete garage with rock face blocks in front and 15° of sides" for $4,596. This building has been designated by counsel as a "showroom."

The record further shows that certain extras were orally contracted for by the owner with Wm. Tontrup.

Thereafter, and before the completion of the second garage or showroom, Tontrup tore down a porch upon a residence on the same premises and proceeded to erect a new porch under an oral contract, which is denied by the owner through her husband. While it is contended that this porch was erected without the consent of the owner, the evidence is conclusive in our minds that this work formed the basis of a verbal contract with the owner.

There is evidence that material furnished for the garages was diverted by the general contractor for use in the construction of the porch. For such diversion the materialmen cannot be held responsible, after de-

livery on the premises, to a lawful custodian, such as the general contractor or his employees.

Certain material was furnished by the East End Lumber Company and the Cincinnati Builders Supply Company, which is the foundation of liens filed by these materialmen. It is clear that Tontrup gave each a general order for his needs for the entire work involving the two garages, and that the materials for the two garages and extras were furnished under a general running account, constituting in each case but one contract between the materialman and the general contractor.

A lien was filed in proper time by the East End Lumber Company covering all material furnished "in and for the erection of certain buildings" situated upon the premises, which was one lot on which was located the residence for which the porch was built and the two garages.

The petition filed by the East End Lumber Company states "that on and prior to the 23rd of April 1928, it furnished material to William Tontrup a contractor erecting a building under a contract with the defendant Emily A. Bennett."

The answer of the owner admits that it (the East End Lumber Company) furnished material to William A. Tontrup, a contractor erecting a building under a contract with this defendant (Emily A. Bennett), as alleged. The amounts and dates of furnishing the material are denied.

In the case of the Cincinnati Builders Supply Company it is stated that the supply company is a "sub-contractor having a contract with William Tontrup, having a contract with Emily A. Bennett the owner for improving, remodeling or erecting a building situated upon" certain described property.

The cross-petition of the supply company states that "it furnished material to William Tontrup a contractor

erecting a building under a contract with the defendant Emily A. Bennett.''

The answer of the owner to this cross-petition admits that the supply company ''furnished material to William Tontrup a contractor erecting a building under a contract with the defendant (Emily A. Bennett).'' The character, amount, and time of delivery of the materials is put in issue by the denials of the answer.

Section 8316, General Code, provides as follows: ''Where the construction, excavation or improvement consists of two or more buildings united together, situated on the same lot or contiguous or adjacent lots, or of separate buildings upon contiguous or adjacent lots, or where machinery, material, fuel, or labor has been furnished for improvements or structures which are located on separate tracts or parcels of land but operated as an entire plant or concern, and erected under one general contract, the lien for the labor, machinery, material or fuel so furnished, shall attach to all such constructions, excavations or improvements, together with the land upon, around or in front of which such labor, machinery, materials and fuel are furnished, the same as hereinbefore provided in case of a single construction, excavation or improvement, and it shall not be necessary to file a separate lien for each construction, excavation or improvement.''

It is contended by the owner that under the circumstances related, if the owner is found to have contracted for the porch, it was necessary for the materialmen to file four affidavits for liens upon the jobs, which it is claimed are all separate and distinct enterprises.

We conclude there was sufficient union of the projects involving the two garages, being upon the same parcel of ground, belonging to the same owner, and all the work being done with continuity, as to constitute,

under these pleadings and the evidence, such a case as would make the statute applicable to these two constructions, and that only one affidavit was necessary to establish a lien upon these two buildings and the premises upon which they were located.

The language used in the statute is not as clear as might be desired, but we consider that the intent is to permit the filing of one affidavit when the buildings are erected by one owner, and there is no definite severance in their construction, and the material is furnished under one general contract with the general contractor, and all the work in general being one continuous transaction covering buildings having some general connection in their purpose or use, in this case a garage and showroom. There might be, however, a case where each building erected or improved was obviously intended as a completely separate and distinct construction and enterprise, and we are not here passing upon the question whether or not when such state of facts appears a materialman might not be required to take notice of the distinct character of the enterprises and cover each contract of the general contractor with a lien corresponding thereto, in spite of the fact that only one contract existed between the general contractor and materialman. Each case will present, undoubtedly, a different state of facts requiring application of the statute.

Among the authorities noted by counsel is that of *Ulmer* v. *Portage Construction Co.*, 26 N. P. (N. S.), 257, affirmed by the Court of Appeals, and motion to certify refused by the Supreme Court. This is the only Ohio authority in point.

This case and the work by Dewitt are in accord with our conclusion.

The liens are sustained only to the extent of the garage and showroom; the residence is exempted from their operation. The decree will so provide, and con-

fine by proper description of the property the application of the liens to the showroom and garage.

*Decree accordingly.*

HAMILTON, P. J., and CUSHING, J., concur.