356 P.2d 281

UTAH SAVINGS AND LOAN ASSOCIATION, Plaintiff, Respondent and Cross-Appellant,

v.

Robert B. MECHAM et al., Defendants,

Ludlow Plumbing Supply Company, Defendant and Appellant,

No. 9159.

Supreme Court of Utah.

Oct. 18, 1960.

———◇———

Aldrich & Bullock, Provo, Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, for Utah Savings & Loan Ass'n.

Heber Grant Ivins, American Fork, Thomas S. Taylor, George E. Ballif, and Phillip V. Christenson, Provo, for Mecham and others.

Backman, Backman & Clark, Salt Lake City, for Ludlow Plumbing Supply Co.

JONES, District Judge.

Three principal actions to foreclose real estate mortgages, wherein a number of defendants appeared and claimed materialmen's liens, were consolidated for trial below and are similarly appealed. From judgments foreclosing all of the mortgages and some of the claimed liens, an appeal and cross-appeal have been perfected.

These combined actions, comprising 36 causes of action, presented a complex and difficult set of problems for the trial court to resolve. As we have surveyed the record it appears that uncertainty as to certain principles of law, hereinafter discussed, may have accounted for the fact that the findings made are inadequate to determine the issues presented. Our rules (Rule 52 (a) U.R.C.P.) provide that the court must "find facts specially" and these cases well illustrate the necessity for full compliance with this provision.

Defendant Ludlow's materialman's lien was determined to be of no force and effect while the other lien claimants, Geneva Rock Products, Masonry Specialties and Supply, and Central Utah Block Company

were awarded full lien rights and priority over the plaintiff's mortgages as to all amounts the latter advanced after construction commenced. Defendant Ludlow was given a money judgment for the balance due as against the owner-builder, Mecham.

Upon the present state of the findings we are unable to determine whether the above determinations should be permitted to stand. Because of the necessity for further proceedings we hereinafter discuss certain principles of law applicable thereto.

It would seem that the proper construction of the applicable sections of our code should resolve certain of the questions of law involved.[1] One of these provisions is: Section 38-1-8, U.C.A., which provides:

"Liens against two or more buildings, mining claims or other improvements owned by the same person or persons may be included in one claim; but in such case the person filing the claim must designate therein the amount claimed to be due him on each of such buildings, mining claims, or other improvements."

This court has been liberal in construing this section. In an early case [2] a miner was awarded lien rights on two different mining claims although the notice of lien did not segregate the amount due on each claim. And the same rule has been applied to a materialman where the property involved was treated and considered by the parties as one entity,[3] and in a later case the same principle was invoked where both labor and material were involved.[4] We observe that the statute does not limit a lien claimant to contiguous properties where more than one structure is involved.

■ Because they were unable to segregate and fix the value of the materials which went into the various properties, these lien claimants ask that we apply an "equitable apportionment" rule which would charge each lot with what the court may determine to be an equitable portion of the amount of lien proved by the several mate-

1. In making this statement, we are not unmindful of the issues of estoppel and lack of acknowledgment tendered by appellant in its amended answer on which the court overlooked the necessity of making findings of fact.
2. Garner v. Van Patten, 20 Utah 342, 58 P. 684.
3. Eccles Lumber Co. v. Martin, 31 Utah 241, 87 P. 713.
4. United States Bldg. & Loan Ass'n v. Midvale, etc., 86 Utah 506, 44 P.2d 1090.
5. Frudden Lumber Co. v. Kinnan, 117 Iowa 93, 90 N.W. 515; East End Lumber Co.

v. Bennett, 46 Ohio App. 104, 187 N.E. 786; Sprague Inv. Co. v. Mouat Lumber, 14 Colo.App. 107, 60 P. 179; Warrenton Lumber Co. v. Smith, 117 Or. 530, 245 P. 313; Badger Lumber Co. v. Holmes, 44 Neb. 244, 62 N.W. 446; Houston Fire & Cas. Ins. Co. v. Hales, Tex.Civ.App., 279 S.W.2d 389; Drake Lumber Co. v. Puget Mtge., 203 Or. 66, 274 P.2d 804; Sierra Nevada Lumber Co. v. Whitmore, 24 Utah 130, 66 P. 779; United States Bldg. & Loan Ass'n v. Midvale, etc., 86 Utah 506, 44 P.2d 1090.
6. Title 38, Chapter 1, U.C.A.1953.

**162**

rialmen.[5] Subject to the limitations of our statute [6] and an early case construing the same,[7] we think that this is a practical and fair way of resolving the dilemma with which the trial court was confronted. In applying this rule the court should have in mind the following qualifications: first, it must be made to appear that there is no available means of definite proof as to just what material went into which unit of property; second, sufficient proof must be presented showing that some material actually went into each of the several structures or improvements and that the land or lots be sufficiently identified and described in the notice of lien. Once these requirements are met, the court may proceed to equitably apportion out the total amounts due for materials furnished by each claimant among the various properties on which the materials were used.

As to defendants, Masonry Specialists and Geneva Rock Products, the court found that the materials furnished actually reached the lots covered by the liens, and correctly apportioned the amounts due.

And Section 38-1-5 provides:

"The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, improvement or structure was commenced, work begun, or the first material furnished on the ground; also over any lien, mortgage or other encumbrance of which the lien holder had no notice and which was unrecorded at the time the building, structure or improvement was commenced, work begun, or first material furnished on the ground."

This section has also been liberally construed by Utah's courts down through the years. We do not deem it necessary to analyze all of the decisions in which this section has been referred to. It is appropriate to quote from the language used by the late Mr. Justice Frick: [8]

"The trust company apparently retained the money in its possession as mortgagee, and paid it out from time to time upon vouchers issued by the contractor. * * * therefore, the material furnished * * * and the money advanced by the trust company were intended and used for the same purpose, namely, the construction of the

7. See Garner v. Van Patten, supra.

8. Culmer Paint & Glass Co. v. Gleason, 42 Utah 344, 130 P. 66, 68.

building upon the real property * * * and upon which the mortgages were given as first lien. The equities, as between the trust company and Gorman, were therefore entirely equal in time; and were it not for our statute, which gives the mortgagee the preference, they would be equal in right. The statute, however, does not permit the mortgagee to claim a lien for more than he has advanced to the mortgagor, as against any other lien claimant. Equity and good conscience both forbid the enforcement of such a claim, especially as against another lien claimant who has furnished material and performed labor upon the buildings, and has thus enhanced the value of the mortgaged property. The real estate upon which the building is erected, and which is necessary to, or the use thereof, together with said building, constitutes a fund out of which the lien claimants, including the mortgagee, are to be paid. The fact that the mortgagee is given priority under our statute does not permit him to reduce the fund by fictitious claims; but his claims must be limited, at least as against other bona fide lien claimants, to the amount he has ac-

tually advanced on the mortgage which he claims to be a first lien."

▮▮▮▮ The remaining defendant lien claimants also argue that they should be permitted to retain the priorities awarded them by the trial court because there was no legally binding agreement between the Mechams as mortgagors and the plaintiff as mortgagee covering the future advances to be made on the obligations and, therefore, the money advanced after those lien claimants had commenced delivering the materials to the properties should be treated as separate transactions, inferior to their lien rights.[9] It is therefore necessary for the trial court to determine when the mortgagee became bound to advance such moneys. We must be guided by our statute which provides that a mortgagee be given priority as against any materialman who commenced delivering materials on the particular property subsequent to the recordation of the mortgage. It must be appreciated that a mortgagee who is loaning money to a mortgagor-borrower generally is not only entitled but obliged to pay out the money in accordance with the directions of the borrower. There is an exception to the rules just stated, however, which may have application here: if the mortgagee had

9. Ex parte Whitbread, 19 Ves. 209, 34 Eng.Rep. 496; Elmendorf-Anthony Co. v. Dunn, 10 Wash.2d 29, 116 P.2d 253, 138 A.L.R. 558; W. P. Fuller & Co. v. Mc-Clure, 48 Cal.App. 185, 191 P. 1027; American Law of Property, Vol. IV, Sec. 16.70, et seq.

knowledge that the money was being borrowed for the purpose of creating improvements on the property, and that materials were being furnished under circumstances that it reasonably should know that materialmen or labor were relying on being paid from such funds, and further knew that such moneys were being diverted into other purposes or projects foreign to the one for which the loans were made, with the result that the materialmen would not be paid, then under such circumstances the mortgagee should not be accorded priority as to those funds advanced after a given materialman commenced delivering building supplies onto the properties. As these factual questions were not resolved by the trial court, we cannot decide this issue.

The judgments in these cases are vacated and the causes remanded to the district court for further proceedings consistent with this opinion. Appellant Ludlow Plumbing and Supply Company and cross-appellant Utah Savings and Loan Association to recover their costs on appeal.

CROCKETT, C. J., WADE and CALLISTER, JJ., and JOSEPH G. JEPPSON, District Judge, concur.

HENRIOD and McDONOUGH, JJ., do not participate herein.